UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
LIZ Y.A., obo, D.A.,

                        Plaintiff,         <u>DECISION AND ORDER</u>
                                           1:20-cv-07533-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In August of 2015, Plaintiff Liz Y. A.[1] applied for Child Supplemental Security Income benefits under the Social Security Act on behalf of her son, D.A. ("Claimant"). The Commissioner of Social Security denied the application.  Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 22).

This case was referred to the undersigned on May 2, 2022.  Presently pending are the parties' Motions for Judgment on the Pleadings under Rule

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

12 (c) of the Federal Rules of Civil Procedure. (Docket No. 19, 23). For the following reasons, Plaintiff's motion is due to be denied, the Commissioner's motion is due to be granted, and this case is due to be dismissed.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on behalf of Claimant on August 18, 2015, alleging disability beginning February 1, 2015. (T at 15, 84).[2] Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on May 14, 2019, before ALJ Beverly Parkhurst. (T at 40). Plaintiff appeared with Claimant and an attorney and testified. (T at 48-56). The ALJ also received testimony from Dr. Sal R. Nimmagadda, a medical expert. (T at 56-73).

### B.    ALJ's Decision

On May 29, 2019, the ALJ issued a decision denying the application for benefits. (T at 9-34).  The ALJ noted that Claimant was a "school-age" child on August 18, 2015, when the application was filed, and was an

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 14.

"adolescent" at the time of the decision. (T at 18).  Claimant had not

engaged in substantial gainful activity since the application date. (T at 18).

The ALJ found that Claimant's attention deficit hyperactivity disorder,

oppositional defiant disorder, anxiety disorder, and depressive disorder

were severe impairments as defined under the Social Security Act. (T at

18).  However, the ALJ found that Claimant did not have an impairment or

combination of impairments that met or medically equals one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T

at 18).  The ALJ also concluded that Claimant did not have an impairment

or combination of impairments that functionally equaled the severity of the

Listings. (T at 19).

As such, the ALJ found that Claimant had not been under a disability,

as defined under the Social Security Act, since the application date and

was therefore not entitled to benefits. (T at 26).  On July 17, 2020, the

Appeals Council denied Plaintiff's request for review, making the ALJ's

decision the Commissioner's final decision. (T at 1-4).

C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing

a Complaint on September 14, 2020. (Docket No. 1).  On December 16,

2021, Plaintiff filed a motion for judgment on the pleadings, supported by a

memorandum of law. (Docket No. 19, 20).  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on February 14, 2022. (Docket No. 23, 24).  On March 7, 2022, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 25).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.     *Standard for Disability Claims for Children*

To qualify for SSI benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security Regulations provide a three-step sequential analysis to determine whether a child is disabled and eligible for benefits. 20 C.F.R. § 416.924(a)-(d); *see Pollard v. Halter*, 377 F.3d 183, 189 (2d

Cir. 2004). First, the ALJ considers whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ determines whether the child has a "medically determinable impairment(s) that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id*. § 416.924(c). Third, if the child has a severe impairment(s), the ALJ must then decide whether the impairment meets or "medically" or "functionally" equals a disability listed in the regulatory "Listing of Impairments." Id. § 416.924(c), (d); *see also id*. at Part 404, Subpart P, App. 1.

To demonstrate functional equivalence, the child must exhibit a "marked" limitation in two of six functional domains described in the regulations, or an "extreme" limitation in one of the domains. 20 C.F.R. § 416.926a(a) (2017); *see Pollard*, 377 F.3d at 190.

The first five domains consider the child's ability to acquire and use information, attend and complete tasks, interact and relate with others, move about and manipulate objects, and care for himself. 20C.F.R. § 416.926a(b)(1)(i)-(v) (2017). The sixth domain considers the child's health and physical well-being. Id. § 416.926a(b)(1)(vi).

A child has a "marked" limitation when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or

complete activities." 20 C.F.R.§ 416.926a(e)(2)(i) (2017). "'Marked'

limitation . . . means a limitation that is 'more than moderate' but 'less than

extreme.'" Id. An "'extreme'" limitation is present when the impairment

"interferes very seriously with [the child's] ability to independently initiate,

sustain, or complete activities." Id. § 416.926a(e)(3)(i).

### III.  DISCUSSION

Plaintiff argues that the ALJ should have found Claimant markedly

limited in at least two domains.  In particular, Plaintiff contends that the ALJ

did not afford proper weight to the opinion of Claimant's treating providers

with respect to his ability to (a) acquire and use information and (b) attend

and complete tasks.

In April of 2019, Heather Oras, LMSW, and Dr. Aimee Mankodi

completed a Children's Mental and Psychological Impairment Evaluation.

At that time, they had been treating Claimant bi-weekly for approximately

two months. (T at 789).  They noted that Claimant demonstrated temper

tantrums, behavioral outbursts, frequent worry, slamming doors, and

lashing out. (T at 789).  Ms. Oras and Dr. Mankodi opined that Claimant

had marked limitation in acquiring and using information, noting deficits

with respect to understanding and following oral instructions and

expressing ideas in words or gestures. (T at 790).  They assessed marked

limitation in attending and completing tasks, noting impairment in

Claimant's ability to complete tasks on time and sit still for 10 minutes at a

time. (T at 791).  Ms. Oras and Dr. Mankodi reported marked limitation in

Claimant's ability to interact with and relate to others, noting deficits in his

ability to get along with authority figures, communicate with others using

verbal and non-verbal skills, and speak intelligibly and with adequate

fluency. (T at 791).  The treating providers opined that Claimant had

marked limitation in caring for himself, including the ability to follow safety

rules, avoid dangerous situations, and express his wants and needs. (T at

791).  Ms. Oras and Dr. Mankodi assessed moderate limitation in

Claimant's ability to move about and manipulate objects and less than

marked limitation with respect to his health and physical well-being. (T at

792).

"Regardless of its source, the ALJ must evaluate every medical

opinion in determining whether a claimant is disabled under the [Social

Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013

WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§

404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

A "treating physician" is the claimant's "own physician, psychologist,

or other acceptable medical source who provides [the claimant] ... with

medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

Treating physician opinions are considered particularly probative because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

An opinion from a treating physician is afforded controlling weight as to the nature and severity of an impairment, provided the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

Notably, however, treating physician opinions are not always dispositive. For example, an opinion will not be afforded controlling weight if it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

To determine how much weight a treating physician's opinion should be given, the ALJ considers the "*Burgess* factors" identified by the Second

Circuit: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019)(following *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

The *Burgess* factors are also applied to the opinions of non-treating physicians, "with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant." *McGinley v. Berryhill*, No. 17 Civ. 2182, 2018 WL 4212037, at *12 (S.D.N.Y. July 30, 2018).  A consultative physician's opinion may constitute substantial evidence. *See Petrie v. Astrue*, 412 F. Appx 401, 406 (2d Cir. 2011).

The ALJ may reach a determination that "does not perfectly correspond with any of the opinions of medical sources," provided the ALJ's overall assessment is supported by substantial evidence and consistent with applicable law. *See Trepanier v. Comm'r of SSA*, 752 Fed. Appx. 75, 79 (2d Cir. 2018).

In the present case, the ALJ declined to give controlling weight to the assessment of marked limitations offered by Claimant's treating providers and found less than marked limitation in all domains. (T at 20-27).  For the

reasons that follow, this Court concludes that the ALJ's decision is supported by substantial evidence and is consistent with applicable law.

### A.    Acquiring and Using Information

In this domain, the ALJ considers how well the child acquires or learns information and how well they use the information they have learned.  20 C.F.R. § 416.926a (g)(1).

A school-age child "should be able to learn to read, write, and do math, and discuss history and science."  The child demonstrates what they have learned in academic situations by "reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions." The child uses the skills in daily living and the community by, for example, "reading street signs, telling time, and making change." A school-age child should also be able "to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [their] own ideas, and by understanding and responding to the opinions of others." 20 C.F.R. § 416.926a (g)(2)(iv).

Adolescents should continue to demonstrate their learning in academic assignments such as "composition, classroom discussion, and laboratory experiments" and in independent daily living, e.g., by "going to

the store, using the library, and using public transportation." An adolescent should also "apply these skills in practical ways that will help [them] enter the workplace after [they] finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer)." 20 C.F.R. § 416.926a (g)(2)(v).

As discussed above, Ms. Oras and Dr. Mankodi opined that Claimant had marked limitation in acquiring and using information, noting deficits with respect to understanding and following oral instructions and expressing ideas in words or gestures. (T at 790). Dr. Howard Tedoff, a consultative examiner, diagnosed a specific learning disorder in math and noted that the "prognosis for [Claimant] remining in regular education and moving through the grades [was] guarded." (T at 417). Dr. Tedoff opined that "special education services would prove useful" in addressing Claimant's learning disability in math. (T at 417). Claimant had documented difficulties in following directions. (T at 706-709, 729-34). He received academic support from a special education teacher. (T at 374, 473).

The ALJ found less than marked limitation in this domain. (T at 21). As the ALJ noted, Claimant was assessed with average IQ and was able to attend general education classes, with some testing accommodations and

one period of special education teacher support services. (T at 21, 416, 433-34, 470-77, 491-504). Claimant's performance and behavior at school were described as improved on medication. (T at 21, 727-28, 735). For example, a progress note from May of 2016 evidenced that Claimant was "doing good in school … [l]istens to his teachers, follow(s) their instructions, complete(s) assignments …." (T at 727).

Dr. Tedoff, the consultative examiner, reported that Claimant was reading near grade level, with some delays in his math skills. (T at 415). Dr. Tedoff assessed Claimant's cognitive functioning as "at or slightly below average" and described him as "learning in a manner consistent with approximately low average intellectual functioning." (T at 416-17).

Dr. Nimmagadda, the non-examining medical expert who testified at the administrative hearing, reviewed the record and opined that Claimant had less than marked limitation in acquiring and using information. (T at 59). He described Claimant as having mild academic deficits in reading and math, which were being appropriately addressed by services and accommodations. (T at 59).

A "marked" limitation exists when the claimant's "impairment(s) interferes seriously with [their] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). The Court concludes

that the above-referenced evidence—including the opinion of Dr. Tedoff—

sufficient to support the ALJ's decision to grant less than controlling weight

to the treating providers' assessment of marked limitation in the domain of

acquiring and using information.

B.    *Attending and Completing Tasks*

In this domain, the ALJ considers how well the child is "able to focus

and maintain … attention, and how well [they] begin, carry through, and

finish … activities, including the pace at which [they] perform activities and

the ease with which [they] change them." 20 C.F.R. § 416.926a(h).

School-age children should be able to "focus … attention in a variety

of situations in order to follow directions, remember and organize … school

materials, and complete classroom and homework assignments."  They

"should be able to concentrate on details and not make careless mistakes

in [their] work (beyond what would be expected in other children … who do

not have impairments)."  The school-age child "should be able to change …

activities or routines without distracting [themselves] or others, … stay on

task and in place when appropriate, … [and] sustain … attention well

enough to participate in group sports, read by [themself], and complete

family chores." The child "should also be able to complete a transition task

(e.g., be ready for the school bus, change clothes after gym, change

classrooms) without extra reminders and accommodation."  20 C.F.R. §
416.926a(h)(2)(iv).

Adolescents "should be able to pay attention to increasingly longer
presentations and discussions, maintain … concentration while reading
textbooks, and independently plan and complete long-range academic
projects." They are also expected to "be able to organize … materials and
to plan [their] time in order to complete school tasks and assignments. "In
anticipation of entering the workplace, [they] should be able to maintain …
attention on a task for extended periods of time, and not be unduly
distracted by … peers or unduly distracting to them in a school or work
setting." 20 C.F.R. § 416.926a(h)(2)(v).

Ms. Oras and Dr. Mankodi opined that Claimant had marked
limitation in attending and completing tasks, noting impairment in his ability
to complete tasks on time and sit still for 10 minutes at a time. (T at 791).
Plaintiff struggled with school attendance and homework completion. (T at
383, 478-90, 491-504).  Dr. Tedoff diagnosed ADHD, hyperactive,
impulsive type. (T at 417).  Plaintiff testified to Claimant's hyperactivity (T at
48) and treatment notes documented difficulties with concentration, focus,
impulse control, and following directions. (T at 400, 401, 403, 521, 522,
536, 572).

The ALJ assessed less than marked limitation in this domain. (T at 22).  The ALJ referenced and relied upon school records that described Claimant on ADHD medication as a "dedicated and hardworking student," who "obey[ed] teachers, follow[ed] instructions, complete[d] assignments, and g[ot] along with classmates." (T at 471, 727).  And notably, Dr. Tedoff assessed only "mild" impairment in Claimant's attention and concentration, with "mild limits" in "completing some age appropriate tasks." (T at 416-17).  Dr. Steven Tsoutsouras, another consultative examiner, described Claimant as demonstrating "normal attention span for age." (T at 420). Dr. Nimmagadda testified at the administrative hearing that Claimant had less than marked limitation in attending and completing tasks. (T at 59-60).  He characterized Claimant's difficulties with school attendance and task completion as "intermittent." (T at 60).

As described above, "marked" limitation exists when the claimant's "impairment(s) interferes seriously with [their] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).  The Court concludes that the above-referenced evidence is sufficient to support the ALJ's decision to afford less than controlling weight to the treating providers' assessment of marked limitation in the domain of attending and completing tasks.

C.    *Overall Consideration of Treating Providers' Opinion*

Plaintiff objects generally to the way in which the ALJ reviewed the opinion of Ms. Oras and Dr. Mankodi, noting that the ALJ said she was giving "greater weight" to the assessment of Dr. Nimmagadda without saying how much weight she was giving to the treating providers' opinion. (T at 21-22).  Although the ALJ might have been more precise in the language of her analysis, her ultimate conclusions, nonetheless, are supported by a reasonable reading of the record, including evidence of significant improvement on medication and a fairly limited range of school and community-based interventions and supports. And importantly, the ALJ's conclusion are supported by the assessments of three physicians, Dr. Tedoff and Dr. Tsoutsouras, who examined Claimant, and Dr. Nimmagadda, who testified at the administrative hearing subject to cross-examination.

When the record, as here, contains competing medical opinions, it is the role of the Commissioner, and not this Court, to resolve such conflicts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Moreover, "[s]ubstantial evidence is "a very deferential standard of review…." *Brault v. SSA*, 683 F.3d 443, 447-48 (2d Cir. 2012) (per curiam)

17

(citation omitted). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." Id. at 448 (emphasis in original) (citation and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008)(citation and internal quotation marks omitted).

Indeed, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Id.* (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.")(citation omitted).

For the reasons outlined above, the Court concludes that the ALJ referenced and relied upon evidence sufficient to sustain her decision not to give controlling weight to the treating providers' opinion as to the degree of Claimant's limitation in the domains at issue.  For that reason, the Commissioner's decision must be sustained under the deferential standard of review applicable here.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 19) is DENIED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 23) is GRANTED; and this case is DISMISSED. The Clerk is directed to enter final judgment consistent with this decision and then close the file.

Dated: August 2, 2022                    *s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge